# IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF TEXAS

## LUFKIN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 2 2 2023

BY
DEPUTY _____

WOODROW J. JONES, SR.,               §
                                     §
        *Plaintiff,*                 §
                                     §
                                     §     CIVIL ACTION NO. 9:23cv59
                                             Truncale | Hawthorn
GRAPELAND INDEPENDENT SCHOOL

DISTRICT, [ET. AL] TRUSTEES          §

SUPERINTENDENT DON JACKSON

(OFFICIAL AND INDIVIDUAL CAPACITY§

MRS. KRISTI BELL, (OFFICIAL AND

INDIVIDUAL CAPACITY)                 §

BRAD SPISAK (PRESIDENT OF TRUSTEES)

OFFICIAL AND INDIVIDUAL CAPACITY

DR. DAVID MAASS, INTERM

(CURRENT SUPERINTENDENT)             §

        *Defendants'*


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

[EEOC], [ET.AL]

SUSANA NAHAS (INVESTIGATOR)

DEIDRA HENRY (INVESTIGATOR)

1

ELIZABETH PORRAS (ON BEHALF OF THE COMMISSION)

TRAVIS M. NICHOLSON, ACTING DISTRICT DIRECTOR (DALLAS OFFICE)

*Defendants'*

## **Table of Content**

I.      CAUSE OF ACTION....................................................13

II.     JURISDICTIONAL AND VENUE.....................................14-15

III.    PARTIES PLAINTIFF...................................................15-16

IV.     PARTIES DEFENDANT................................................16-17

V.      BACKGROUND.......................................................17-30

VI.     REQUEST FOR INJUNCTION RELIEF..............................30-34

VII.    CONCLUSION AND REQUESTFOR RELIEF....................34-37

VIII.   TRIAL DEMAND BY JUDGE.............................................38

IX.     CERTIFICATE OF SERVICE.............................................38

# TABLE OF AUTHORITIES

Cases

Adderley v. Florida, 385 U. S. 39 (1966).

Albemarle Paper Co., v. Moody, 422 U.S. 405, 415-17 (1975).

Brown v. Board of Education 347 U.S. 483, 489-90 (1954).

Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000).

Brown v. Louisiana, 383 U. S. 131 (1966).

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742. 761 (1998).

Cf. Cox v. Louisiana, 379 U. S. 536, 555 (1965)

Cf. Thornhill v. Alabama, 310 U. S. 88 (1940).

Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 765 (5th Cir. 1988).
Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996).

Edwards v. South Carolina, 372 U. S. 229 (1963).

Faruki v. Parson S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997).

Marbury v. Madison 5 U.S. 137 (1803).
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Morgan v. Swanson, 659 F.3d 359, 375 (5th Cir. 2011).
Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 853, 121 S. Ct. 1946, 1952 (2001).

Price, 687 F.2d at 78 (quoting Sanchez v. Standard Brands, Inc. 431 F.2d 455, 462 (5th Cir.1970)).

Ringgold v. National Maintenance Corp., 796 F.2d 769.770 (5th Cir. 1986).

Stromberg v. California, 283 U. S. 359 (1931).

Taylor v. Books A Million, Inc., 296 F.3d. 376, 379 (5th Cir. 2002).

Tinker v. Des Moines Independent Community School District., 393 U.S. 503, 506 (1969).

US District Court for Eastern District of Texas. 321 F. Supp. 1043 (E.D. Tex. 1970).

West Virginia v. Barnette, 319 U. S. 624 (1943).

Yick Wo v. Hopkins, 118 U.S. 356 (1886)

Statutes:

1st Amendment of the Constitution of United States of America

5th Amendment of the Constitution of United States of America

10th Amendment of the Constitution of United States of America

14th Amendment of the Constitution of United States of America

Civil Rights Act of 1866

Civil Rights Act of 1964

28 U.S.C. §§1331, 1343 (a) (3) & (4)

28 U.S.C. § 1343 (a) (3).

28 U.S.C.§ 1291

29 U.S.C. § 626 (d) (1), (e).

29 U.S.C.§ 12201.

42 U.S.C. § 2000 c-2(a)

42 U.S.C.§ 2000e-5(b)

42 U.S.C.§ 1981, 1983, and § 1985

42 U.S.C. § 2000 e (5) (1) (1994)

42 U.S.C.§ 1988.

42 U.S.C. § 2000e-5(g) (1)

Section 11.151 (a) of the Texas Education Code

Section 706 of Title VII gives the EEOC and 29 C.F.R.§ 1614.

## PLAINTIFF'S ORIGINAL COMPLAINT

Now come, Plaintiff *Woodrow J. Jones, Sr. Pro se*, and will show the honorable court that Plaintiff free speech was absent the exception of materially and substantially interfering with the requirement of appropriate discipline in the operation of the school or impinge upon the right of other students, teachers, or administrators.[1]

Plaintiff asserts and alleges pursuant to the Free Speech Clause the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment.[2]  It is closely akin to "pure speech" which, the court have repeatedly held, is entitled to comprehensive protection under First Amendment and

---

[1] See: Tinker v. Des Moines Independent Community School District., 393 U.S. 503, 506 (1969) and Morgan v. Swanson, 659 F.3d 359, 375 (5th Cir. 2011).

[2] See West Virginia v. Barnette, 319 U. S. 624 (1943); Stromberg v. California, 283 U. S. 359 (1931). Cf. Thornhill v. Alabama, 310 U. S. 88 (1940); Edwards v. South Carolina, 372 U. S. 229 (1963); Brown v. Louisiana, 383 U. S. 131 (1966).

Due Process Clause of Fourteenth Amendment for forbidding school employees for expressing views when they are requested voluntary.[3]

> *On or about January 3, 2022, at appropriately 8:30 a.m., Superintendent gave a welcome back presentation to all employees following the Christmas holiday break. After his presentation, he stated that he would like all employees to fill out a Staff Input Survey concerning his stewardship of [GISD] and the survey was voluntary, and no employees would receive reprisal for their input to the Staff Survey.*

Superintendent Donald "Don" Jackson, hereafter, [Superintendent] and Grapeland Independent School District [GISD], along with the School Board "All-White" Trustees has waived its sovereignty and/or qualified immunity pursuant to **Section 11.151 (a) of the Texas Education Code.** The code stipulates that trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, *sue and be sued*, and receive bequests and donations or other moneys or funds coming legally into their hands. The Superintendent and GISD has engaged in unlawful employment practice pursuant to **42 U.S.C.§ 2000e-5(b),** Plaintiff's Constitutional Rights, first, fifth, tenth, and fourteenth, as well as Plaintiff's Civil Rights pursuant to the Civil

---

[3] Cf. Cox v. Louisiana, 379 U. S. 536, 555 (1965); Adderley v. Florida, 385 U. S. 39 (1966).

Rights Act of 1866 and Civil Rights Act of 1964. Pursuant to Title II-Injunctive Relief Against Discrimination in Places of Public Accommodation: **Section 201 [42 U.S.C. 2000a]** through **Section 1106[42 U.S.C. 2000h-6]**. [4]

1. The Superintendent waived his qualified immunity when he expressed the Staff Input Survey [survey] was voluntary "one who chooses freely to do something", and that no person would receive any reprisal for filling out the survey. Plaintiff assert the superintendent, and Kristi Bell, Director of Special Programs,, as well as the GISD Trustees violated Plaintiff's constitutional rights under color of law by singling Plaintiff out to retaliation, egregious hostile work environment, a threatening and belligerent interrogation in front of Plaintiff's supervisor Katie Doughty, Principal of the High School, treating Plaintiff to disparate treatment, retaliation, violating Plaintiff's Equal Protection rights, Age Discrimination in Employment Act 29 U.S.C.§ 12201 et seq.

_____

[4] Texas Education Code: Subchapter D: Powers and Duties of Board of Trustees of Independent School District. Section 11.151(a). Retrieved on April 10, 2022.http://statutes.capitol.texas.gov. Price, 687 F.2d at 78 (quoting Sanchez v. Standard Brands, Inc. 431 F.2d 455, 462 (5th Cir.1970)). Thirty-Nine Congress, Session I., Chapter 31. 1866; Section 2-10. Civil Rights Act of 1964 [Public Law 88-352; 78 Stat.241 [As Amended Through P.L. 114-95, Enacted December 10, 2015]

("ADEA"), First Amendment Retaliation, creating a hostile work environment, Race Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 c-2(a), Section 703(a) sets forth in Title VII's, as well as violations involving "tangible employment" action.[5]

2. The Superintendent's pretextual actions began on or about January 21, 2022, when Plaintiff learned during a scheduled meeting Superintendent set up in his office for Plaintiff to attend. The Superintendent "pattern and practice" of mistreatment and retaliation were calculated or reasonable inference causation, in the breath that when Plaintiff got in the meeting, the superintendent did not address the Plaintiff's job duties, the superintendent went right into addressing the Staff Input Survey because according to the superintendent, the survey was the elephant in the room. Therefore, during the meeting, Plaintiff learned that he was treated differently than the other employees, because the other employees Staff Input Survey was not forwarded to the superintendent as Plaintiff's Survey

---

[5] Burlington Industries, Inc. v. Ellerth, *524 U.S. 742.* 761 (1998).

had been.  On or about January 24, 2022, Plaintiff filed an employee complaint via email to Plaintiff's Supervisor, Principal Katie Doughty and it appears that she forwards the complaint against Mrs. Bell to the Superintendent.  On or about January 25, 2022, Superintendent sent Plaintiff a summary of meeting and in return, Plaintiff sent Superintendent a rebuttal to his summary of the meeting on January 26, 2022, at 8:07 a.m.

3.On or about January 26, 2022, at 10:33 a.m., Plaintiff received an email from Superintendent requesting another meeting. Plaintiff email back on or about January 26, 2022, at 10:42; email as following:

> *Good morning Mr. Jackson*
>
> *In response to your email, I just received I would welcome a productive dialogue with you. We can meet now.  I would also like to request the present of Principal Doughty. She is fair and does not have a lack of accurate recall of the facts.  There is only one perspective, and it is the truth.  I am not the cause of confusion.*
>
> *Plaintiff received an email from Superintendent at 11:18 a.m. stating "come on over." Thank,*
>
> *On or about January 27, 2022, at 12:40 a.m., Principal Katie Doughty sent out an email stating "Do I need to come over right now?  Sorry we just finished lunch.*
>
> *On or about January 27, 2022, at 10:08 a.m. sent an email to Principal Katie Doughty, stating "No problem, Julie sat in...and we recorded the meeting."*

4.On or about January 27, 2022, Plaintiff filed his employee complaint form-Level One in person at the administration building and it was

signed off on as being received on January 27, 2022.  As a result of Plaintiff learning Superintendent instructed Mrs. Kristi Bell to violated Plaintiff's confidentiality connected with the Staff Input Survey, Plaintiff amended his complaint on or about February 6, 2022, to include the Superintendent in the complaint.

> *Pursuant to GISD school board local policy: Personnel-Management Relations employees complaint/grievance DGBA (Local page 3 of 7), Plaintiff complied with the rules of consolidating complaints and timely filing.*

> *Complaints arising out of an event, or a series of related events shall be addressed in one complaint.  Level One: with 15 day of the date the employee first knew, or with reasonable diligence should have known (DGBA Local, page 4 of 7)[6]*

5.The Superintendent responded to the complaint, when in fact, the superintendent was a party to the employee complaint.  Pursuant to GISD school board policies, DGBA (LOCAL) page 2 of 7, maintained that a complaint alleging a violation of law by a supervisor may be made to the Superintendent or designee.  Complaint forms alleging a violation of law by the Superintendent may be submitted directly to the Board or designee.

---

[6] Grapeland ISD 113902. Personal-Management Relations Employee Complaints/Grievances. DGBA(LOCAL) page 3 of 7 and 4 of 7. Date issued: 2014 November 18.

6.The Trustees, nor did the Superintendent, complied with GISD school board policy because the Superintendent addressed Plaintiff's complaint in which he is a party too. On or about February 14, 2022, Superintendent responded to the complaint about Mrs. Kristi Bell and himself.  The "pattern and practice" of any honorable individual is to rescue oneself from participating in a matter when there is a conflict of interest.  Plaintiff believes such actions are relevant in all areas, whether it is politics, judges, lawyer, or being on a school board, as well as the superintendent, each entity had to participate in a basic ethics class that covered inappropriate behavior in the work environment.

7.Plaintiff also presented this lack of fairness to the All-White school board who failed to protect Plaintiff's first and fourteenth amendments rights.  Plaintiff assert and allege that different rules were enforced against Plaintiff, but not enforced against white employees.

In response to Plaintiff's outcry from the Superintendent's revelations, the "All-White" school board continued to allow the Superintendent to create a hostile work environment, retaliation against Plaintiff, as

well as harass and wrongfully terminate Plaintiff on the pretextual actions that Plaintiff was subordinate.

Plaintiffs allege violations of Title VI of the Civil Rights Act of 1964 ("Title VI"), Deprivation of Rights under 42 U.S.C.§ 1981, 1983, and § 1985, breach of contract, ADA, Age discrimination, and Wage discriminations.

8.Plaintiff asserts and alleges that the burden of producing a "prima facie" case of racial discrimination has been established by a preponderance of the evidence in this case at bar.  Pursuant to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Plaintiff is black, Plaintiff was qualified for the position of Dean of Students, that he was demoted from that position for no cause and ultimately discharged for other pretextual reason, and the position remained open and was ultimately filled by a white male.  Plaintiff is challenging that defendant has intentionally violated Plaintiff's § 1983 rights.

9.Plaintiff asserts and alleges that if the honorable court finds that the prima facie case is supported by a preponderance of the evidence. It must find the existence of the presumed fact of unlawful

discrimination and must therefore, render a verdict for the plaintiff. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).

## I. <u>Cause of Action</u>

10.Plaintiff relies on the Charge of Discrimination, charge number 450-2023-00859.[7] Plaintiff asserts and alleges that the discrimination is based on Age, Color, Disability, National Origin, Race, Retaliation, and Sex. Plaintiff has set forth specific facts in support of his allegations in the court records indicating EEOC received Plaintiff's complaint prior to 300 days limitation period.   Plaintiff has exhausted the administrative remedies before pursuing this claim in federal court. Pursuant to Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996), exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives statutory notice of right to sue.

11. Title VII provides that Plaintiff have ninety (90) days to file a civil action after receipt of such a notice from the EEOC.[8] Pursuant to 42

---

[7] EEOC form 5 (11/09) Charge of Discrimination. EEOC 450-2023-00859.
[8] Nilsen v. City of Moss Point, Miss., 674 F.2d 379, 381 (5th Cir. 1982).

U.S.C. § 2000 e (5) (1) (1994). This requirement to file a lawsuit within the ninety-day limitation period is strictly constructed. See Ringgold v. National Maintenance Corp., 796 F.2d 769.770 (5th Cir. 1986).

## II.    Jurisdictional and Venue

12.The Court has subject matter jurisdiction over this action pursuant to: Federal questions: Title 28 of the United States Code, Section 1131. [28 USC § 1331], which grants United States district courts original jurisdiction over any civil action "arising under the...laws...of United States [28 U.S.C. § 1343 (a) (3)], which grants district courts original jurisdiction over any civil action to redress a deprivation of any rights secured by a law of the United States "providing for the equal rights of citizens within the jurisdiction of the United States and (3) 28 U.S.C. § 1343 (a) (4), which grants district courts original jurisdiction over any civil action under "any Act of Congress providing for the protection of civil rights including the right to vote."

13.This Court has personal jurisdiction over GISD because the district is located within Houston County, Texas.  This Court also has personal jurisdiction over the Trustees because each resides in Grapeland,

Texas, or Houston County, and all reside within the territorial boundaries of GISD.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (1), because all Defendants reside in the State of Texas, and all reside within the District of Texas.

### III.  Parties

#### A. Plaintiff

15. Plaintiff Woodrow J. Jones, Sr., Pro se, is a United States citizen, and African American, and was employed with the GISD from [2018-2022] without any negative evaluation from his immediately supervisor, Principal, Katie Doughty, or the Superintendent. In fact, Plaintiff record with GISD has been pristine until after Plaintiff spoke with the Superintendent on January 21, 2022, about the Truancy Officer job duties and salary, as well as Plaintiff submitting the Staff Input Survey to Defendant. Plaintiff has never received a job evaluation nor signed a job duty description or any specific job details to substantiate Plaintiff's job duties.  Plaintiff was hired to oversee the In-School Suspension and Truancy based on the written declaration by the

Superintendent who recommended the position and approved by the School Board Trustees. [9]   However, Plaintiff never received an equitable salary based on equal pay for equal work.

### B. Defendants

16. Defendants GISD is an Independent School District located in Houston County and created pursuant to Texas law.  GISD may be served with process through its Attorney at Law, firm, Walsh Gallegos Trevino Kyle & Robinson P.C. 10375 Richmond Avenue Suite 1357 Houston, Texas 77042-4196.

All Defendant's [At El], superintendent, Mrs. Kristi Bell, and all the trustees can be served through the school attorney per her instructions on March 2, 2022, via email that was sent to Plaintiff. The following school board members: James Martin, Josh Goolsby, Tim Howard, Chance Huff, Allen Cheatham, Ryan Richie, and Brad Spisak, Board President (each individually, and Trustee and collectively, the "Board"), as well as the two formal board members, Melissa Cobb, and Kendra Huff.  Kristi Streetman is the Human Resources personnel

---

[9] See Superintendent Board Briefing in July 2019.

and Julie Martin, Finance and Payroll, failed to complete an audit to determine if any discrepancies between employee duties and pay, if any exist. Plaintiff never received a response from Defendant's about such an audit.

Defendants Deidra Henry, EEOC Investigator, Travis Nicholson, Acting District Director can be served at EEOC Dallas District Office, 207 S. Houston Street, 3rd Floor, Dallas, Texas 75202. Elizabeth Porras, on behalf of the Commission, Susana Nahas, Investigator, and Ligita D. Landry can be served at El Paso Area EEOC office, located at 100 N. Stanton Street, Suite 600, El Paso, Texas 79901.

**III Background**

17. Texas law stipulates that the Board of Trustees of Independent School District constitute a body corporate and in the name of the district may sue and be sued. Texas Education Code § 11.151 (a) subchapter D, as well as Grapeland Independent School District [GISD] board policy: Board legal status powers and duties [BAA Legal]. Discretionary Powers and Duties, number 6. Sue and be sued in the name of the district., Texas Education code 11.151 (a). Defendant's

own written statement articulates the position Plaintiff was hired for at GISD. See Don Jackson Grapeland ISD Board Briefs July 2019; Page 2.

18. Plaintiff initially was employed by GISD as a substitute teacher on or about 2018-2019 fiscal year. In the fiscal year of 2019-2020, Plaintiff was hired and confirmed by the Trustees of GISD for the position of Behavior Specialist, overseeing the In-School Suspension (ISS) and Truancy according to Defendant's own evidence. From fiscal year 2018 until 2022, Plaintiff received no negative write-ups, no evaluation assessments from his immediate supervisor, the principal, nor any from the Superintendent for insubordination or violating any procedure rules of the GISD.

19. Fiscal year 2020-2021, Plaintiff was promoted to the position of Dean of Students, with the responsibility of assistance the principal with disciplinary and working with students whose criminogenic needs were at-risk. At some point in 2021, Plaintiff and Superintendent could not agree on Plaintiff's salary working as the Dean of Students. When Plaintiff returned GISD after the summer break for fiscal year 2021-2022, Plaintiff was demoted without notification, nor a reason for the demoted. Plaintiff was placed in a position he was initially hired to

oversee (Truancy Officer). The Superintendent requested that Plaintiff be reassigned to menial or degrading work, but Plaintiff's immediate disagreed with assignment. Plaintiff asserts that every step in the process of the Superintendent adverse actions were designed to dehumanize, retaliate, and undermine Plaintiff before his immediate supervisor.

20. Plaintiff asserts and alleges that Plaintiff was qualified for the position of Dean of Students. However, Plaintiff was replaced by a white male pretextual based on the Superintendent agreeing to pay Plaintiff a salary increase. This is the implied message Plaintiff received from such demotion. Plaintiff still did not receive any unfavorable evaluations from his immediately supervisor nor the Superintendent. Plaintiff is and was qualified for all positions held with GISD.

- Plaintiff received a bachelor's degree from Sam Houston State University in Criminology and Corrections, a master's degree from Prairie View A&M University in Administration of Education, and a master's degree from Texas Southern University in Executive Administration of Criminal Justice.

- Plaintiffs have twenty years of experience in custodial juvenile care with the Texas Youth Commission.

- Approximately Seven months [Federal grant] as a School Resource Officer for the following schools:  Lovelady Independent School District, Kennard Independent School District, and Latexo Independent School District.

- Plaintiff has been employed with the Houston County Sheriff's Department for four years as a Reserve Certified Deputy Sheriff's and two years as a full-time Deputy Sheriff, and as a jailer within the same Sheriff's Department.

- Six years with Texas Department of Criminal Justice-Institution Division of custodial care of adult offenders.

- Three years as an Adult Probation Officer-Community Supervision and Correction Department officer for Houston County Adult Probation Department.

- Taught for three years as a special educational teacher [6th-8th] grade with Texas Youth Commission.

- Coached Linebackers for a Semi-Professional Football League in Palestine, Texas for the Roughneck.

- Played collegiate football at the following Universities: Wharton County Junior College, McMurry State University, and Sam Houston State University.

21. Before the summer break ended in 2021, the Superintendent and Plaintiff spoke over the mobile cell phone and had a meeting of the mind about Plaintiff's new salary in which Plaintiff never received. On or about August 26, 2021, Plaintiff wrote an email to Julie Martin, Business manager in reference to Plaintiff new salary.[10]

22. Plaintiff asserts and alleges that the tree was poison when the Superintendent demoted Plaintiff for no reason and the bell could not be unring. In the fiscal year of 2021-2022, the degree of harassment, and retaliation was so unbearable, Plaintiff notified the Trustees and Attorney-at-law for GISD, that the Superintendent inappropriate behavior was so intolerable that Plaintiff sent an email out to explain the meaning of constructive discharge. However, that email went on deaf ears.[11]

---

[10] Email to Julie Martin, RTSBA. (2021 August 26 at 8:41 a.m.) wrote: My current salary does not reflect the agreed conversation Superintendent Jackson and I had during the summer break.
[11] Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000). See attached Facebook email from one of the coaches at GISD. Faruki v. Parson S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997).

23. On or about January 4, 2022, during the Superintendent welcome back presentation, the Superintendent requested all employees to fill out a Staff Input Survey about his stewardship of GISD and forward it to Mrs. Kristi Bell.

24. On or about January 21, 2022, the Superintendent scheduled a meeting with Plaintiff for the pretextual, or but for causation, to discuss Plaintiff's job duties. However, the meeting was to degrade, create a hostile work environment, badger, harass, and retaliate against Plaintiff in front of his immediate supervisor about the survey Plaintiff filed out about the Superintendent.

25. On or about January 27, 2022, Plaintiff filed an employee complaint/grievance within the 15 days limitation according to the school board local policy.

26. On or about February 6, 2022, still within the 15 days limitation period. Plaintiff amended his complaint/grievance to include Superintendent Jackson for his intolerable behavior toward Plaintiff.

27. On or about February 14, 2022, the Superintendent answered the complaint/grievance which is a conflict of interest because he was a

party to the complaint/grievance.  It is likely to giving a person the Hamletic poison and in the same breath, say I did not kill the person.

28.  Plaintiff asserts and alleges that Plaintiff responded to the Superintendent answering the complaint/grievance, and eventually, the Trustees placed Plaintiff's complaint/grievance on the calendar for a Level-III Appeal Hearing before the Trustees on March 28, 2022. Plaintiff attempted to resolve this complaint/grievance on March 4, 2022, by sending Attorney-at-law, Morgan Beam for the school an email to settle the matter without success.[12]

29. Plaintiff asserts and alleges that on March 28, 2022, the Trustees upheld Mrs. Kristi Bell treating Plaintiff differently than the other employees by giving the Staff Input Survey to Superintendent Jackson. However, The Trustees ruled against Plaintiff receiving his salary increase.  Plaintiff expressed to the All-White Trustees board that Plaintiff did not receive his salary increase akin to the school board president's wife did nor as the Superintendent's daughter received her salary increase.  Plaintiff expressed to the Trustees, if the school

---

[12] Settlement Agreement. March 4, 2022, email to Morgan Beam.

board was not All-White and had non-white representatives on the school board, it would be plausible for Plaintiff to receive his salary increase that was promise to Plaintiff.

30. Pursuant to the local school board policy, DGBA, page 4 of 7, Plaintiff was entitled to a review within the 10 days period, in which Plaintiff was denied.[13]

31. On or about May 13, 2022, the Superintendent sent out an invitation for a meeting with Plaintiff.  On the day of the meeting, Plaintiff received permission to leave work that morning, due to Plaintiff known and recorded disability in Plaintiff file. Plaintiff's immediate supervisor became aware of his illness and approved the leave that morning.

32. On or about May 16, or 17, 2022, Plaintiff was invited to another meeting with Superintendent Jackson. Based on the continuous harassment, hostile work environment, and retaliation. Plaintiff

---

[13] Email: Level III Appeal/Grapeland ISD. (2022 March 30, at 8:01 a.m.) emailed to GISD Attorney-at-law.

responded to the Superintendent in the manner pursuant to Common Myths About Workplace Rights.[14]

33. According to Merriam-Webster, invited is defined as to request the presence or participation of, to request formally, to urge politely, to offer an incentive or inducement to.[15] Neither is it a directive to compel a person to do something. Plaintiff asserts and alleges that there is also an option to attend invitation. One has the prerogative to decline an invitation. Defendant's interpretation of invitation is more "radical" than Webster's dictionary.

34. The final meeting, the Superintendent gave Plaintiff a directive to notify his secretary of a meeting and Plaintiff followed the Superintendent's instructions. The Superintendent's secretary failed to schedule the meeting and not Plaintiff. Plaintiff was disciplined/written up for a meeting that was never scheduled.

---

[14] Presented by Marquette M. Maresh & Robb Decker of the Walsh, Anderson, Gallegos, Green and Trevino, P.C. www.WalshAnderson.com. (Page 3 of 11).

[15] Merriam-Webster's unabridged Dictionary. "Invite." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/invite. Accessed 7 Mar. 2023.

35. On or about May 24, 2022, two days before the school fiscal year was to end, Superintendent accosted Plaintiff with two City of Grapeland law enforcement officers to indicate Plaintiff was terminated.

36. On or about May 25, 2022, Plaintiff filed a complaint/grievance disagreeing with the wrongful termination by Superintendent Jackson. On or about June 23, 2022, the Trustees held a termination hearing for Plaintiff in which the All-White school board took no action. In other words, the complaint/grievance was dismissed, "dead."

37. Pursuant to Chapter 819 of the Texas Administrative Code, Texas Workforce Commission Civil Rights Division and Texas law requires that a claimant seeking to file suit for employment discrimination must first file a complaint with the TWC within 180 days of the unlawful employment practice in which Plaintiff complied. Plaintiff filed his EEO complaint on or about May 27, 2022, with the Texas Workforce Civil Rights Division, Employment.[16]

---

[16] TWC Civil Rights Division Complaint. 101 E.15th Street, Guadalupe, CRD, Austin, Texas 78778.

38. Plaintiff have 180 days to file a charge of discrimination in a non-deferral state and 300 days to file in a deferral state.[17]  The Federal law claims to bring a claim under the ADEA, and 42 U.S.C. § 2000 (e), a plaintiff must, exhaust his administrative remedies by filings a timely charge of discrimination with the EEOC; and file suit within 90 days of receiving a notice of dismissal from the EEOC. 29 U.S.C. § 626 (d) (1), (e).  Plaintiff asserts and alleges that Plaintiff has met all stipulations and Plaintiff has presented a valid case to the honorable court. Plaintiff asserts and alleges that all requirements have been met pursuant to Taylor v. Books A Million, Inc., 296 F.3d. 376, 379 (5th Cir. 2002).  In Taylor, the Fifth Circuit noted that the maximum number of days that courts had allowed under the presumption of receipt doctrine was seven days after the EEOC mailed the letter.

39. Plaintiff asserts that if the school board members Trustees represented the demographic population of the community. It is more plausible that the outcome would have been different than the All-White ruling.  The City of Grapeland, Texas has a population of 1,461,

---

[17] Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 765 (5th Cir. 1988).

out of the 1,461 individuals living in Grapeland, Texas, Houston, County Texas. Population by Race: White 1,096 with 57.14 percentage and Black 800 with 41.71 percentage.[18]  However, there is not a single Black citizen on the school board due to the plausible at-large system. There is no equal representation with a Black school population of race and ethnicity is listed as following:

- Total School population: 602

- Africa American: 139; 23.1 %

- White: 379; 63%

- Hispanic: 54; 9%

Two or more races: 19; 3.2% this statistical data percentage of students enrolled in 2020-2021 school year.[19]

40. This is also being brought pursuant to the Voting Rights Act to challenge the "at-large" election system used by Grapeland Independent School District to elect its Trustees, which has deprived hundreds of minority voters in GISD of their voting rights guaranteed

---

[18] Grapeland, Texas population 2022, Retrieved: (2022 September 27). Grapeland, Texas Population 2022 (Demographics, Maps, Graphs) (worldpopulationreview.com)
[19] Grapeland ISD. Grapeland, Texas. Retrieved: (2022 September 27). Grapeland ISD | Texas Public Schools | The Texas Tribune

by law. Plaintiff has standing to seek relief in this suit as an employee of the GISD would was wrongful terminated by the Superintendent and Trustees due to Plaintiff expressing his opinion about the All-White school board during a Level III Appeal Hearing.

41. Defendant GISD is a Texas public school district. It is a political and geographical subdivision of the State of Texas encompassing portions of the County of Houston.

42. Plaintiff's asserts and alleges that the suit arises under the United States Constitution and federal statutes. This Court has jurisdiction over this action under 28 U.S.C. §§1331, 1343 (a) (3) & (4) and 42 U.S.C.§ 1983, and 1988.

43. Texas has a despicable and regrettable history of racism.

44. GISD's neighborhoods also evidence a troubling history of residential segregation and racial conflict.

45. Throughout 1950, Houston County public schools were racially segregated.   In Texas public school today, school population continue generally to reflect the racial segregation of the past.

46. Minority-preferred candidates were rarely successful or not ever successful in trustee election in GISD. The only minority Plaintiff can recall is a Mr. Robert Walker.

47. The at-large system of election is not mandated by state law. In fact, hundreds of Texas school system elect their trustees from single member districts. Case in point, Crockett Independent School District is one of the five school districts in Houston County.

48. In totality, the at-large method of electing the Trustees of GISD dilutes the voting strength of African American and other racial or language minorities.

## IV.  Request for Injunctive Relief:

49. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50. Plaintiff will likely succeed on the merits, because GISD's at-large election system has the force and effect of diluting minority voting strength in GISD elections. There is a sufficiently large and compact community of minority voters within GISD that vote as a cohesive bloc. Anglos in GISD vote as a bloc against minority-preferred candidates.

51.Plaintiff and others African American will suffer immediate and irreparable injury if GISD is allowed to continue utilizing an at-large election system, which will diminish the right to vote in trustee election in the near term and injures federally protected voting rights.

52. There is no harm to GISD by allowing the Plaintiff and other African American in the City of Grapeland the ability to elect trustees in specified single-member districts, which will allow all voters the right to cast a meaningful vote in GISD trustee elections.

53. An injunction is in the public interest, because the right to cast a meaningful vote is the foundation upon which all other rights and freedoms are based. The right to vote for the educational leadership of a public school district is granted by statute, protected by federal and state law, and guaranteed by the U.S. and Texas Constitutions. It is in the public interest of GISD to protect the right of every person to cast a meaningful vote to elect leaders to public office.

54. In the event, Defendant failed to comply with the court, the United States Department of Education shall withdraw all monies used for the education and training of African American.

55. Dr. Ruth Simmons, formal President of Brown University spoke about the condition of Grapeland ISD school district when she was growing up in the Jim Crow era.[20] She, Dr. Ruth Simmons, is a native of Grapeland, Texas.

56. The at-large election system at GISD is a relic to the neo-Jim Crow strategies because it continues to stifle the votes of the African American diaspora in Grapeland, Texas.

57. Earning disparities by race and ethnicity: Texas; the number of white workers 5,898,065, average weekly earnings $1,114.04 and earnings per dollar is $1.00.

Black workers, 1,595,717, average weekly earnings $826.46 and earnings per dollar $0.74.[21]

58. Plaintiff's average weekly earnings at GISD would be $504.42, this is obviously a distortion to Plaintiff and well below $0.74 dollar. Even if the rate of $619.81 average weekly earnings, Plaintiff would still be below the $0.74 dollar range which is still not an equal measurement

---

[20] Dr. Ruth Simmons growing up under Jim Crow in Grapeland, Texas Season I Episode 7 extra, pbs.org/weta/finding-your-roots.
[21] U.S. Department of Labor; Earning Disparities by Race and Ethnicity.

for Plaintiff service vis-à-vis pay. The honorable court must be reminded that the court is not a representative of man, but of God. This was Moses' charge to the magistrates.[22]

59. Plaintiff's average weekly earnings is wage theft at best and nihilistic to the intellectual spirit to be paid an inadequate salary, when the distortion job title of Behavior Specialist on Plaintiff's pay stub does not reflect what Plaintiff is actually getting paid. Nor what Plaintiff was promised to be paid.  Even if Plaintiff was paid the minimum yearly wage for the position of Behavior Specialist which $38,892.00.[23]  The low ended salary would still place Plaintiff's salary below the national average weekly earnings and Texas weekly earnings at $748 a week.

60. The average Behavior Specialist salary in Texas is $45.417 as of April 26, 2022.[24] This would place the average weekly earnings at $873.40 slightly above the $0.76 earning per dollar range.  However, the intent of equal pay for equal work is to elevate all wagers to the $1.00 range within comparability relief.

---

[22] Adele Berlin and Marc Zvi Brettler editors and Michael Fishbane consulting editor. (1999), The Jewish Study Bible. Oxford University Press, Oxford New York, Deuteronomy 1: 16. Page 364. Torah.
[23] Behavior Specialist Salary in Texas. © 2022 Salary.com
[24] Behavior Specialist Salary in Texas. © 2022 Salary.com

61. Black in New York earned just 68 cents for every dollar of white income, although this gap was much lower than in southern cities.[25] Within Sixty-two years, Blacks are slightly above $0.76 earning per dollar range. Basically, in sixty-two years, the black's income earning per dollar range only increased by 8 cents. Unequal at best, for the amount of money Plaintiff put toward earning three college degrees.

62. Plaintiff asserts and alleges that <u>EEOC failed</u> to resolve Plaintiff's <u>complaint pursuant to Section 706 of Title VII gives the EEOC</u> authority to sue on behalf of one or more persons aggrieved by an unlawful discriminatory employment practice where the individual filed a charge with the Commission <u>within 300 days</u> after the alleged act.[26] The EEOC agency failed to comply with rules 29 C.F.R.§ 1614 regulations.

## V.  Conclusion and Requests for Relief:

(A). Ensuring that Defendant's do not maliciously harm Plaintiff and/or others in the future with similar evil unrighteous "pattern and practices" singling out Plaintiff and violating Plaintiff's constitutional

---

[25] Peter Irons. (2002). Jim Crow's Children, The Broken Promise of the Brown Decision. Page 39.
[26] Brown v. Board of Education 347 U.S. 483,489-490 (1954).

rights of equal protection and free speech. Keep in mind, the superintendent asked all employees to fill the survey out without any reprisal.

(B). Plaintiffs receive back pay of equitable relief under 42 U.S.C. § 2000e-5(g) (1). The Supreme Court has held that back pay award is an integral part of the primary objective of Title VII to deter unlawful employment practices.[27]

(C). Plaintiffs receive Front Pay equitable relief for the school year of 2022-2023 under 42 U.S.C. § 2000e-5(g) (1) "because of continuing hostility between the Plaintiff and Defendant's or its workers and/or because of psychological injuries that superintendent's behavior has caused Plaintiff.[28]

(D). Plaintiff has yet to be paid for equal work and equal pay, even though, the superintendent is placing Plaintiff in the job titles as the DAEP as recently as April 30, 2022, without proper compensation and treating Plaintiff as if Plaintiff was a slave. Nevertheless, superintendent

---

[27] See: Albemarle Paper Co., v. Moody, 422 U.S. 405, 415-17 (1975).

[28] See: Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 853, 121 S. Ct. 1946, 1952 (2001).

made a bid to allocate money from the "Trustees" to construct a new turf football field. If Plaintiff is not reinstated to the position he was hired for [Behavior Specialist], Plaintiff is requesting that the court grant Plaintiff with front pay.[29]

(E). Plaintiff would like the honorable court to award Plaintiff all and any other damages Plaintiff is entitled too, to prevent Defendant's from harassing, humiliation, bullying, creating a hostile work environment, and retaliation against Plaintiff or anyone else in the future.

(F) Plaintiff and Defendant's pay they're on cost of the court, because the School Board had an opportunity to resolve this matter at the local level [School Board] due to an at-large system election system, the non-whites do not have an opportunity to vote effectively in an election in GISD.

(G). Appropriate preliminary and permanent injunctive relief to which Plaintiff and other African American are entitled.

---

[29] Marbury v. Madison 5 U.S. 137 (1803).

(H). Entry of a declaratory judgment as described above.

(I). Any other or further relief, in law or equity that the Court determines that Plaintiff is entitled to receive.

(J). All parties pay for their own expanse as outlined in GISD local school policy.[30]

Plaintiff asserts that the fifth circuit case of appeal has a long history of withholding Federal assistance (money) from school district in Texas for utilizing segregated methods to dehumanize certain selects of the community for political and racist gains.[31]

The Order of April 20, 1971, does not, therefore, place a new burden of enforcement upon the State. Rather, it constitutes a reminder that the responsibility for achieving and preserving a constitutional system lies at all levels of the governmental structure.[32]

---

[30] Employee Complaints/Grievances. DGBA (LOCAL). Page 3 of 7.
[31] US District Court for Eastern District of Texas. 321 F. Supp. 1043 (E.D. Tex. 1970) November 24, 1970.
[32] 330 F. Supp 235 (1971).

## TRIAL DEMAND BY JUDGE

Pursuant to Federal Rules of Civil Procedure 73, Plaintiff request a Magistrate Judge, Trial by consent on all issues in the instant petition which may be tried by a Magistrate Judge.

## CERTIFICATE OF SERVICE

On March 10, 2023, Plaintiff filed the "foregoing document" original petition with the clerk of court for the U.S. Eastern District Court Division Lufkin. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b) (2).

3/21/2023

Signature

Woodrow J. Jones, Sr. Pro se

P.O. Box 123

Crockett, Texas 75835

(936) 544-6437 mobile cellphone

woodrowjones23@outlook.com