IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| WOODROW J. JONES, SR, <br><br>             Plaintiff, <br><br> vs. <br><br> GRAPELAND INDEPENDENT SCHOOL DISTRICT, DON JACKSON, INDIVIDUALLY AND IN HIS/HER OFFICIAL CAPACITY; KRISTI BELL, INDIVIDUALLY AND IN HIS/HER OFFICIAL CAPACITY; BRAD SPISAK, INDIVIDUALLY AND IN HIS/HER OFFICIAL CAPACITY; DAVID MAASS, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, SUSANA NAHAS, INVESTIGATOR; DEIDRA HENRY, INVESTIGATOR; ELIZABETH PORRAS, TRAVIS M NICHOLSON, JAMES MARTIN, JOSH GOOLSBY, TIM HOWARD, CHANCE HUFF, ALLEN CHEATHAM, RYAN RICHIE, MELISSA COBB, KENDRA HUFF, LIGITA D. LANDRY, <br><br>             Defendants. | No. 9:23-CV-00059-MJT-ZJH |

**REPORT AND RECOMMENDATION GRANTING MOTIONS TO DISMISS**

     This case is assigned to the Honorable Michael J. Truncale, United States District Judge,

and is referred to the undersigned United States Magistrate Judge pursuant to a standing order.  On

March 22, 2023, Plaintiff Woodrow J. Jones, Sr. ("Jones") sued Grapeland Independent School

District ("GISD"), employees of the school district in both their official and individual capacities

(collectively, "school district defendants"), the Equal Employment Opportunity Commission and

several EEOC employees (collectively, "EEOC defendants"), alleging numerous claims under

state and federal law. Doc. No. 1. On April 4, 2023, Jones filed an *Amended Complaint*. Doc. No. 3.

At the outset, the undersigned notes that Jones' *Amended Complaint* (Doc. No. 3) is riddled with pleading deficiencies and is difficult to decipher throughout. Nonetheless, construing Jones' claims liberally, the undersigned discerns the following claims from Jones' *Amended Complaint*: breach of contract, violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Voting Rights Act ("VRA"), 42 U.S.C. § 1981, conspiracy under 42 U.S.C. § 1985, and deprivation of constitutional rights under the First, Fifth, Tenth, and Fourteenth Amendments. *Id.* at 5–7, 10–11, 22–23. Jones' claims relate to his alleged demotion and termination from his employment with GISD. *Id.* at 21, ¶ 34.

Pending before the Court are three motions to dismiss: (1) the school district defendants' *Motion to Dismiss* (Doc. No. 34); (2) GISD's *Motion to Dismiss* (Doc. No. 41); and the EEOC defendants' *Motion to Dismiss* (Doc. No. 66). The undersigned will address all three motions in the instant Report and Recommendation. After careful review of the filings and applicable law, the undersigned finds that Jones failed to plead sufficient facts to suggest a reasonable possibility of recovery on any of his claims alleged against the school district defendants, GISD, or the EEOC defendants. Accordingly, the undersigned recommends granting (1) the school district defendants' *Motion to Dismiss* (Doc. No. 34); (2) GISD's *Motion to Dismiss* (Doc. No. 41); and (3) the EEOC defendants' *Motion to Dismiss* (Doc. No. 66).

## I.    Factual and Procedural Background

This case arises from an employment dispute between Jones and his former employer, Grapeland Independent School District. According to the facts alleged in Jones' *Amended*

*Complaint* (Doc. No. 3), Jones was employed by GISD from 2018 through his termination in 2022. Doc. No. 3 at 13. Jones is African American. *Id.* Jones alleges that he was initially employed by GISD as a substitute teacher beginning in 2018. Doc. No. 3 at 16, ¶ 19. In 2019, Jones was hired by GISD as a behavior specialist, where he oversaw in-school suspensions and managed student truancy. *Id.* Jones alleges that in 2020, he was promoted to Dean of Students, where he had the responsibility of assisting the principal with student disciplinary issues. *Id.*, ¶ 20.

At some point in 2021, while Jones was Dean of Students, he was involved in a dispute about his salary with Don Jackson ("Jackson"), the GISD superintendent at the time. *Id.* at 16, ¶ 20. Jones alleges that at some point during summer 2021, Jones and Jackson spoke on the phone about Jones' salary. *Id.* at 18, ¶ 22. On August 26, 2021, Jones emailed Julie Martin, a business manager with GISD, about his "new salary." *Id.* at 18, ¶ 22. Jones alleges that when he returned to work in fall 2021, he found that he had been demoted to Truancy Officer without notification or explanation. *Id.* at 16, ¶ 20. Jackson scheduled a meeting in his office between himself and Jones on January 21, 2022 to discuss Jones' job duties. *Id.* at 7, ¶ 3; 18, ¶ 24. At that meeting, Jackson discussed the "Staff Input Survey" that Jones had submitted. *Id.*, ¶ 3. Jones alleges that his survey was forwarded to the superintendent, while other employees' surveys were not. *Id.* at 7.

Next, on January 24, 2022, Jones emailed an "employee complaint" to his supervisor, Principal Katie Doughty.[1] *Id.* at 7–8, ¶ 3. On January 25, Jackson emailed Jones a summary of their meeting, and on January 26, Jones replied with a "rebuttal" to Jackson's summary of the meeting. *Id.* at 8, ¶ 3. On January 26, Jones and the superintendent again exchanged emails regarding scheduling another meeting. *Id.*, ¶ 4. On January 27, Jones filed his "employee

---

[1] The undersigned notes that while Jones does not specifically describe what his "employee complaint" was about, the surrounding facts suggest that his employee complaint pertained in some way to the January 21, 2022 meeting between Jones and Jackson.

complaint form-Level One" against GISD. *Id.*, ⁋ 5. On February 6, 2022, Jones amended his employee complaint to include Jackson. *Id.* at 9, ⁋ 5. Jones alleges that at some point after that, Jackson responded to the complaint. *Id.*, ⁋ 6.

On March 28, 2022, the GISD Board of Trustees held a "Level-III Appeal Hearing" on Jones' employee complaint. *Id.* at 19, ⁋ 28. Jones attempted to resolve his employee complaint by emailing attorney Morgan Beam and asking to settle the matter, but this was unsuccessful. *Id.* at 19. The GISD Board of Trustees dismissed Jones' appeal of his employee complaint. *Id.* at 10, ⁋ 8. Jones appealed the Board of Trustees' dismissal of his complaint, and his appeal of the dismissal was also dismissed. *Id.* at 19, ⁋ 29.

On May 13, 2022, Jones alleges that Jackson invited him to a meeting, but Jones was unavailable because he had received permission to leave work due to his "known and recorded disability."[2] *Id.* at 19–20, ⁋ 30. Jones alleges that on May 16 or 17, 2022, Jackson invited Jones to another meeting. *Id.* at 20, ⁋ 31. Jones does not state whether he attended this second meeting. Jones alleges that Jackson then invited him to a third meeting and directed him to contact Jackson's secretary to schedule the meeting. *Id.*, ⁋ 33. However, Jones alleges that Jackson's secretary failed to schedule the meeting, which led to Jones being disciplined for "a meeting that was never scheduled." *Id.* On May 24, 2022, Jackson fired Jones. *Id.* at 21, ⁋ 34.

On May 25, 2022, Jones filed another employee complaint expressing his disagreement with Jackson's decision to terminate his employment. *Id.* at 21, ⁋ 35. On June 23, 2022, the GISD Board of Trustees held a termination hearing on Jones' complaint and ultimately dismissed his complaint. *Id.* On May 27, 2022, Jones filed his EEO complaint with the Texas Workforce Civil

---

[2] The undersigned notes that Jones fails to allege the nature of his disability anywhere in his *Amended Complaint*. Doc. No. 3.

Rights Division, Employment Section. *Id.* at 21, ⁋ 36. Jones alleges that he exhausted his administrative remedies and received notice of his right to sue. *Id.* at 11, ⁋ 11.

On March 22, 2023, Jones filed his *Complaint*. Doc. No. 1. The undersigned subsequently ordered Jones to file an amended complaint that complied with Local Rule 3(d). Doc. No. 2. On April 4, 2023, Jones filed his *Amended Complaint*. Doc. No. 3. On May 22, 2023, the school district defendants filed their instant *Motion to Dismiss*. Doc. No. 34. On June 5, 2023, GISD filed its instant *Motion to Dismiss*. Doc. No. 41. On January 30, 2024, the EEOC defendants filed their instant *Motion to Dismiss*. Doc. No. 66.

## II.    Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of a federal district court. *See* Fed R. Civ. P. 12(b)(1). The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart, Inc. v. U.S. Department of Justice*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When ruling on a 12(b)(1) motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling,*

5

*L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).  "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B.  Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs must state enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  When assessing a motion to dismiss under this rule, the court must accept as true all well-pleaded facts in the plaintiffs' complaint and view those facts in the light most favorable to the plaintiffs. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).  However, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotations omitted).

### C.  Pro Se Pleading Standards

"A document filed *pro se* is to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted).  However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Nix v. Major League Baseball*, 62 F.4th 920, 928 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 165 (2023) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III.    School District Defendants' Motion to Dismiss

Jones alleges a variety of claims against the school district defendants in his *Amended Complaint* (Doc. No. 3) (Defendants Don Jackson, Kristi Bell, Brad Spisak, David Maas, James Martin, Josh Goolsby, Tim Howard, Allen Cheatham, Ryan Richie, Melissa Cobb, and Kendra Huff). Jones alleges claims against the school district defendants in both their individual and official capacities. Doc. No. 3 at 13, ⁋ 17. The school district defendants' *Motion to Dismiss* (Doc. No. 34) addresses Jones' claims brought against these defendants in their individual capacities.[3]

Jones' alleged claims include (1) breach of contract; (2) discrimination, retaliation, harassment, hostile work environment, and wrongful termination under Title VII; (3) violation of the ADA; (4) violation of the ADEA; (5) violation of the VRA; (6) discrimination under 42 U.S.C. § 1981; (7) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; and (8) constitutional claims under the First, Fifth, Tenth, and Fourteenth Amendments. Doc. No. 3 at 5–7, 10–11, 22–23. The school district defendants move to dismiss all causes of action brought against them in their individual capacities.[4] Doc. No. 34 at 8.

At the outset, the undersigned notes that throughout Jones' entire 30-page *Amended Complaint*, he alleges specific claims against only one individual: Don Jackson, the former superintendent. Aside from Jackson, Jones' *Amended Complaint* is a form of "shotgun pleading"

---

[3] While the school district defendants' *Motion to Dismiss* (Doc. No. 34) addresses Jones' claims brought against the school district defendants in their individual capacities, GISD's *Motion to Dismiss* (Doc. No. 41) addresses Jones' claims brought against these defendants in their official capacities (discussed below in Section IV).

[4] The page numbers in the school district defendants' motion (listed at the bottom of each page) differ from the court's docket page identification number at the top of the page (stamped by the court clerk when docketed). For clarification, this report refers to the court's page number stamped at the top of the page.

that fails to provide any of the other 10 school district defendants of "adequate notice of the claims against them and the grounds upon which each claim rests." *See Valadez v. City of San Antonio*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (W.D. Tex. May 20, 2022) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)). Specifically, Jones' complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Regarding the school district defendants, Jones fails to clearly allege which defendant is responsible for which conduct that allegedly gives rise to his litany of claims. Dismissal of Jones' claims is likely warranted on this basis alone. Nonetheless, the undersigned will consider the merits of each claim against the school district defendants.

### A. Breach of Contract

Jones asserts a breach of contract claim in his *Amended Complaint*. Doc. No. 3 at 10, ¶ 8. First, the school district defendants contend that this court lacks subject matter jurisdiction over Jones' breach of contract claim because Jones failed to exhaust his administrative remedies with the Texas Commissioner of Education. Doc. No. 34 at 11–12. As a threshold matter, the undersigned notes that Jones has not pleaded sufficient facts to establish the existence of a contract between himself and any of the 11 named school district defendants, but a court must consider challenges to subject matter jurisdiction under FED R. CIV. P. 12(b)(1) before it considers motions to dismiss for failure to state a claim under FED R. CIV. P. 12(b)(6). *See Ramming*, 281 F.3d at 161.

Here, Jones failed to plead any facts asserting that he properly exhausted his administrative remedies under Section 7.057(a) of the Texas Education Code. Jones contends that he was not required to exhaust his administrative remedies with the Texas Commissioner of Education because he was not hired as a teacher. *See* Doc. No. 37 at 2, ¶ 3. Further, Jones maintains that he

exhausted any necessary administrative remedies by filing a timely charge with the EEOC.  *See* Doc. No. 3 at 11, ¶ 11.  Jones is incorrect.  He was required to exhaust his administrative remedies by filing a complaint with the Texas Commissioner of Education under Section 7.057(a) of the Texas Education Code before filing suit.  *See Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 657 (Tex. 2013) (noting that under § 7.057(a)(2)(B), school district employees alleging a breach of an employment contract where facts are in dispute must generally exhaust administrative remedies by bringing an appeal to the Texas Commissioner of Education).  "Until the [Texas Commissioner of Education] issues a final ruling with respect to a claim for breach of an employment contract, a plaintiff is deemed not to have exhausted [his] administrative remedies and may not bring an independent breach of contract action."  *Shackelford v. Bonham Indep. Sch. Dist.*, No. 4:18-CV-00035, 2018 WL 3630153, at *2 (E.D. Tex. July 31, 2018).  Jones has not alleged facts showing that he received a final ruling from the Texas Commissioner of Education regarding his claim for breach of an employment contract.

Additionally, whether Jones was hired as a teacher is irrelevant with respect to exhausting administrative remedies under Section 7.057(a)—both teachers and non-teachers must exhaust their administrative remedies if their claims fall within the statute's purview.  *See, e.g., Houston Indep. Sch. Dist. v. Rose*, No. 01-13-00018-CV, 2013 WL 3354724, at *3 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that Texas law required a non-teacher employed on a one-year term contract to exhaust administrative remedies with the Texas Education Commission before filing suit).  Jones failed to plead facts establishing that he exhausted his breach of contract claim against the school district defendants by first filing a complaint with the Texas Commissioner of Education pursuant to Section 7.057(a) of the Texas Education Code.  Thus, the court lacks subject matter jurisdiction over Jones' breach of contract claim against the school district defendants.

Turning to the 12(b)(6) motion, the school district defendants contend that even if the court has subject matter jurisdiction over Jones' breach of contract claim, he failed to plead sufficient facts to establish the existence of a contract between himself and any of the 11 individual school district defendants. The undersigned agrees. Under Texas law, to establish a breach of contract claim, a plaintiff must establish four elements: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Jones failed to plead any facts establishing the first element: the existence of a contract between him and any of the school district defendants. Instead, he alleges only that the defendants are liable for "breach of contract." Doc. No. 3 at 10, ℙ 8. This is simply a legal conclusion. Thus, Jones failed to plead sufficient facts to establish a plausible breach of contract claim against the school district defendants. Accordingly, Jones' breach of contract claims against the school district defendants in their individual capacities should be dismissed.

### B. Title VII Claims

Jones asserts a variety of Title VII claims in his *Amended Complaint* but does not specifically allege that the school district defendants are liable for the alleged harm suffered. Doc. No. 3 at 10, ℙ 8; 11, ℙ 11. Regardless, Jones cannot establish a Title VII claim against an individual acting in their individual capacity. *See Stelly v. Duriso*, 982 F.3d 403, 408 n.6 (5th Cir. 2020) (noting that individual defendants acting in their individual capacity who do not meet the definition of employer cannot be liable under Title VII). Jones failed to plead sufficient facts to establish that any of the school district defendants acted in the capacity of his employer rather than their

individual capacities.  Accordingly, Jones' Title VII claims against the school district defendants in their individual capacities should be dismissed.

### C.  ADA Claims

Jones asserts an ADA claim in his *Amended Complaint*.  *See* Doc. No. 3 at 10, ¶ 8.  To the extent Jones' ADA claim is brought against the school district defendants in their individual capacities, it must be dismissed because the ADA does not authorize claims against individual defendants.  *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (noting that a plaintiff may not sue a defendant in their individual capacity under the ADA).  Accordingly, Jones' ADA claims against the school district defendants in their individual capacities should be dismissed.

### D.  ADEA Claims

Jones asserts an ADEA claim in his *Amended Complaint*.  *See* Doc. No. 3 at 7, ¶ 2.  To the extent Jones' ADEA claim is brought against the school district defendants in their individual capacities, it must be dismissed because the ADEA does not authorize claims against individual defendants.  *See Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 709 F. App'x 243, 247 (5th Cir. 2017) (noting that "the ADEA provides no basis for individual liability for supervisory employees") (internal quotations omitted).  Accordingly, Jones' ADEA claims against the school district defendants in their individual capacities should be dismissed.

### E.  Voting Rights Act Claims

Jones asserts a claim under the VRA to challenge the at-large election system used by GISD to elect its Trustees.  Doc. No. 3 at 22–23, ¶ 39.  To the extent that Jones asserts a VRA claim against the school district defendants in their individual capacities, these claims should be dismissed because VRA claims cannot be asserted against individual defendants.  Rather, VRA

claims may be asserted only against a state or political subdivision.  *See* 52 U.S.C. § 10301 (stating that "no voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any *State or political subdivision* in a manner which results in a denial or abridgement of the right" to vote) (emphasis added).  Accordingly, to the extent Jones alleges VRA claims against the school district defendants in their individual capacities, any such claims should be dismissed.

### F.  42 U.S.C. § 1981 Claims

Jones asserts a race discrimination claim under 42 U.S.C. § 1981 against the school district defendants.  *See* Doc. No. 3 at 10, ¶ 8.  To establish a race discrimination claim under § 1981, Jones must show (1) he is a member of a racial minority; (2) the school district defendants intentionally discriminated against him due to his race; and (3) the discrimination concerns one or more of the enumerated activities in the statute.  *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001).  Here, Jones has not alleged sufficient facts to support the second element. Jones failed to plead any facts suggesting that the school district defendants discriminated against him *due to* his race.  Thus, Jones failed to plead sufficient facts to establish a plausible race discrimination claim under § 1981.  Accordingly, Jones' race discrimination claims under 42 U.S.C. § 1981 against the school district defendants in their individual capacities should be dismissed.

### G.  42 U.S.C. § 1985 Claims

Jones asserts a claim under 42 U.S.C. § 1985 for a conspiracy to violate his civil rights. Doc. No. 3 at 10, ¶ 8.  Section 1985(3) provides a civil cause of action to prevent conspiracies to deprive people of "equal protection of the laws."  42 U.S.C. § 1985(3).  Jones does not specifically allege a conspiracy under § 1985(3), but rather, vaguely mentions § 1985 as a cause of action

among his litany of other claims.  Doc. No. 3 at 10, ¶ 8.  Elsewhere in his complaint, Jones vaguely mentions violations of his equal protection rights.  *See id.* at 7, ¶ 2; 27.  Thus, the undersigned construes Jones' conclusory mention of § 1985 as a conspiracy claim falling under § 1985(3).

To state a valid claim under § 1985(3), a plaintiff must allege that: (1) there was a conspiracy; (2) the conspiracy was made to deprive a person of equal protection of the laws; (3) there was an act under the conspiracy; (4) the act caused injury to a person, property, or deprivation of a right; and (5) a race-or class-based discriminatory animus underlay the conspiracy.  *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).  To allege the existence of a conspiracy, a plaintiff must allege the involvement of two or more persons.  *See id.* at 653.  Here, Jones has not alleged the existence of a conspiracy because he has not alleged any facts regarding which specific defendants formed the conspiracy.  Thus, he failed to establish the first element of a § 1985 claim.  Accordingly, Jones' claims under 42 U.S.C. § 1985 against the school district defendants in their individual capacities should be dismissed.

### H.  42 U.S.C. § 1983 Claims

Jones generally alleges violations of his First, Fifth, Tenth, and Fourteenth Amendment rights.[5]  Doc. No. 3 at 6.  The school district defendants contend that they are entitled to qualified immunity from Jones' constitutional claims.  Doc. No. 34 at 17.  Before turning to the school district defendants' qualified immunity claims, the undersigned will first address whether Jones has pleaded sufficient facts to state a plausible claim for any of the four constitutional violations he alleges.  The undersigned will consider each claim in turn.

---

[5] Additionally, Jones generally alleges a violation of his § 1983 rights by simply naming the statute in several places throughout his complaint.  *See id.* at 10, ¶¶ 8–9, 23, ¶ 41.  This is insufficient to state a claim for relief because a plaintiff must state a violation of a constitutional right to allege a violation of § 1983.

First, Jones' only First Amendment claim alleged with any degree of specificity is a First Amendment retaliation claim against Don Jackson, Kristi Bell, and the GISD school board. Doc. No. 3 at 6, ¶¶ 1–3. This claim relates to Jackson's discussion of a staff input survey during a meeting between Jackson and Jones, and for Jackson, Bell, and GISD's alleged actions in "singling Plaintiff out to retaliation, egregious hostile working environment," and for "placing Plaintiff in a threatening and belligerent interrogation in front of Plaintiff's supervisor." *Id.* These facts do not support a First Amendment retaliation claim. To properly assert a First Amendment retaliation claim, a plaintiff must show "(1) he suffered an adverse employment decision, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action." *Bevill v. Fletcher*, 26 F.4th 270, 276 (5th Cir. 2022) (citing *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

Regarding the second element, any statements Jones made during the alleged meeting between him and Jackson are not protected by the First Amendment because Jones has not established that he spoke as a citizen on a matter of public concern during the meeting. *See Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (noting that "[a]n employee is not speaking as a citizen—but rather in his role as an employee—when he makes statements pursuant to his official duties"). The Fifth Circuit has defined "pursuant to official duties" as "activities undertaken in the course of performing one's job." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008). In analyzing whether a speaker made statements as a citizen or employee, courts focus on the role the speaker occupied when he engaged in the speech, not on the speech's content. *Id.* at 312.

Courts have considered several non-dispositive factors in determining when speech is made pursuant to an employee's official duties, such as "the relationship between the topic of the speech

14

and the employee's job; whether the employee spoke internally up the chain of command at [his] workplace; and whether the speech resulted from special knowledge gained as an employee." *Lewis v. San Jacinto Cnty. Appraisal Dist.*, No. CIV A H-09-2339, 2010 WL 3784492, at *5 (S.D. Tex. Sept. 23, 2010). Additionally, courts have noted that "[w]hether a communication is internal or external in nature may also be significant: where a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, the speech is made pursuant to his official duties, but when an employee take[s] his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, these external communications are typically made as a citizen, not an employee." *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 577 (N.D. Tex. 2012), *aff'd sub nom. Petrie v. Salame*, 546 F. App'x 466 (5th Cir. 2013) (citing *Davis*, 518 F.3d at 313) (internal quotations omitted).

Here, Jones alleges that during the meeting between himself and Jackson, "the superintendent went right into addressing the Staff Input Survey," which was a survey that "the superintendent requested all employees to fill out . . . about his stewardship of GISD." Doc. No. 3 at 7, ⁋ 3; 18, ⁋ 23. The topic of Jones' alleged speech during the meeting was the survey Jones had filled out about Jackson's leadership of GISD, which is Jones' employer. Thus, the topic of this speech is clearly related to Jones' job. Moreover, this meeting was an example of Jones speaking internally up the chain of command because the superintendent was his superior, and based on the facts in Jones' *Amended Complaint*, it seems that only Jones and Jackson were present at the meeting. *See id.* at 7, ⁋ 3. Finally, Jones has not alleged any facts showing that he expressed his "job concerns to persons outside the workplace" in addition to raising them up the chain of command during the meeting between him and Jackson. *See Petrie*, 904 F. Supp. 2d at 577. Based on these factors, it is not plausible that Jones was speaking as a citizen, rather than as an employee

15

of GISD pursuant to his official duties. Thus, his speech is not protected under the First Amendment. Additionally, Jones failed to plead any facts establishing the third or fourth elements of a First Amendment retaliation claim. Accordingly, Jones' First Amendment retaliation claim against Jackson, Bell, and the GISD trustees fails.

The undersigned discerns no other First Amendment claims against specific defendants aside from bare legal conclusions stating that Jones' First Amendment rights were violated.[6] These allegations are insufficient to establish a First Amendment claim. Accordingly, his First Amendment claims against the school district defendants in their individual capacities should be dismissed.

Second, Jones only generally alleged a Fifth Amendment violation among a litany of other claims. *See* Doc. No. 3 at 6 (alleging that "[t]he Superintendent and GISD has engaged in unlawful employment practice pursuant to . . . Plaintiff's Constitutional Rights, first, fifth, tenth, and fourteenth . . ."). Jones failed to plead sufficient facts to establish any plausible Fifth Amendment violation against the school district, and his singular mention of the Fifth Amendment in his *Amended Complaint* amounts to a mere legal conclusion. Accordingly, Jones' Fifth Amendment claims against the school district defendants in their individual capacities should be dismissed.

Third, the undersigned discerns only two possible Fourteenth Amendment claims from Jones' *Amended Complaint*.[7] Doc. No. 3. First, Jones potentially alleges an equal protection claim

---

[6] For instance, Jones states that "Plaintiff asserts and alleges pursuant to the Free Speech Clause the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment. It is closely akin to 'pure speech' which, the court have repeatedly held, is entitled to comprehensive protection under First Amendment . . . for forbidding school employees for expressing views when they are requested voluntary." Doc. No. 3 at 5. This passage includes no facts supporting the existence of a plausible First Amendment claim. Additionally, Jones states that the "All-White school board [] failed to protect Plaintiff's first [] amendments rights." Doc. No. 3 at 10, ¶ 8. This is simply a legal conclusion that contains no facts supporting the existence of a plausible First Amendment claim.

[7] The undersigned notes that Jones mentions the Fourteenth Amendment elsewhere in his *Amended Complaint* only as a legal conclusion. *See*, *e.g.*, *id.* at 5–6, 7, ¶ 2.

16

against Jackson, the superintendent, based on Jones' allegation that "the other employees Staff Input Survey was not forward to the superintendent as Plaintiff's Survey had been." *Id.* at 7, ¶ 3, 27. Second, the undersigned discerns a potential equal protection claim against the school board because Jones alleges that "different rules were enforced against Plaintiff, but not enforced against white employees." *Id.* at 10, ¶ 8.

The Equal Protection Clause requires "that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, [a] plaintiff 'must allege and prove that [1] he received treatment different from that received by similarly situated individuals and [2] that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (noting that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"). "Discriminatory purpose . . . implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (internal quotations omitted and emphasis in original).

Here, regarding Jones' first potential equal protection claim, he has alleged that his "Staff Input Survey" was treated differently than other white employees' surveys. However, Jones failed to plead *any* facts showing how this alleged differential treatment stemmed from a discriminatory intent by any of the school district defendants. A plaintiff who merely alleges differential treatment does not state a plausible Equal Protection claim that is sufficient to survive dismissal under a 12(b)(6) motion to dismiss—a plaintiff must allege *some* facts showing that the differential

treatment derived from a discriminatory intent by the defendant. Jones failed to do so, and his first potential equal protection claim should be dismissed. Regarding Jones' second potential equal protection claim, his allegations amount to a legal conclusion unsupported by any specific facts showing (1) differential treatment between himself and other similarly situated individuals or (2) that such treatment was motivated by discriminatory intent. Thus, his second potential equal protection claim should be dismissed as well. Accordingly, Jones' equal protection claims against the school district defendants should be dismissed.

Finally, Jones' Tenth Amendment claim amounts to an impermissible legal conclusion because he simply lists a violation of the Tenth Amendment in a litany of various claims without providing any facts supporting this claim. Doc. No. 3 at 6. Accordingly, Jones' Tenth Amendment claim is dismissed.

Turning to the issue of qualified immunity, the school district defendants contend that they are entitled to qualified immunity from Jones' constitutional claims. Doc. No. 34 at 17. The undersigned agrees. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crane v. City of Arlington*, 50 F.4th 453, 463 (5th Cir. 2022). Courts engage in a two-prong analysis when assessing claims of qualified immunity. *Id.* First, the court must ask whether the officer's conduct violated a federal right; and second, the court asks whether that right was clearly established at the time of the violation. *Id.* A court may analyze these two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, Jones failed to plead sufficient facts establishing that the school district defendants violated any of his federal rights. Accordingly, the school district defendants are entitled to qualified immunity for all of Jones' constitutional claims under the First, Fifth, Tenth, and Fourteenth Amendments.

In sum, Jones failed to plead sufficient facts to plausibly establish any of his constitutional claims under the First, Fifth, Tenth, or Fourteenth Amendments, and accordingly, all of Jones' constitutional claims asserted against the school district defendants under 42 U.S.C. § 1983 should be dismissed.  Thus, the school district defendants are entitled to qualified immunity on all of Jones' constitutional claims.

**IV.    <u>GISD's Motion to Dismiss</u>**

Jones asserts the same claims against GISD as against the school district defendants in his *Amended Complaint*.  Doc. No. 3.  GISD's *Motion to Dismiss* (Doc. No. 41) addresses Jones' claims against the school district and the school board members sued in their official capacities. GISD moves to dismiss all causes of action brought against the school board itself and all school board officials sued in their official capacities.  Doc. No. 41 at 8.

As with Jones' claims against the school district defendants, his claims against GISD are a form of shotgun pleading because Jones asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *See Valadez*, No. SA21CV0002JKPRBF, 2022 WL 1608016, at *5 (citing *Weiland*, 792 F.3d at 1323).  It is difficult to decipher whether Jones asserts certain claims specifically against GISD, or whether he generally asserts all of his claims against GISD.  Nonetheless, the undersigned construes Jones' claims liberally and assumes that all of his claims asserted against the school district defendants are asserted against GISD as well.

First, the undersigned will consider Jones' claims against the school board officials in their official capacities.  Second, the undersigned will consider Jones' claims against GISD.

### A. Jones' Official Capacity Claims Against Individual Defendants

Jones alleges claims against three GISD board members in their official capacities: Don Jackson, Kristi Bell, and Brad Spisak.  Doc. No. 3 at 1.  Jones mentions no other defendants sued in their official capacities in his *Amended Complaint* (Doc. No. 3).  To the extent that Jones alleges claims against these officials in their official capacity, all are subject to dismissal because they are duplicative of his identical claims against GISD.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (holding that official capacity claims are properly dismissed when the "allegations duplicate claims against the respective government entities themselves.").

Here, Jones' claims against Jackson, Bell, and Spisak in their official capacities with GISD are identical to his claims asserted against GISD and should be dismissed.  To the extent Jones asserts other claims against GISD officials in their official capacities in his *Amended Complaint*, these claims are also considered suits against GISD itself and should be dismissed.

### B. Jones' Claims Against GISD

GISD's *Motion to Dismiss* (Doc. No. 41) addresses Jones' claims brought against GISD. These include: (1) breach of contract; (2) discrimination, retaliation, harassment, hostile work environment, and wrongful termination under Title VII; (3) violation of the ADA; (4) violation of the ADEA; (5) violation of the VRA; (6) discrimination under 42 U.S.C. § 1981; (7) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; and (8) constitutional claims under the First, Fifth, Tenth, and Fourteenth Amendments.  Doc. No. 3 at 5–7, 10–11, 22–23.  GISD moves to

dismiss all causes of action brought against it. Doc. No. 41 at 8. The undersigned will consider each claim in turn.

### 1. Breach of Contract Claim

Jones asserts a breach of contract claim against GISD in his *Amended Complaint*. Doc. No. 3 at 10, ¶ 8. GISD contends that Jones failed to plead facts showing the existence of a contract between himself and GISD. Doc. No. 41 at 13–14. The undersigned agrees. Under Texas law, to establish a breach of contract claim, a plaintiff must establish four elements: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Jones' breach of contract claim against GISD fails because he failed to plead any facts showing (1) the existence or (2) the breach of a contract between himself and GISD. Rather, Jones lists breach of contract as one claim in a litany of other claims. Doc. No. 3 at 10, ¶ 8. This is simply a legal conclusion. *Hays*, 65 F.4th at 743. Accordingly, Jones' breach of contract claim against GISD should be dismissed.

### 2. Discrimination Claims Under Title VII and the ADEA

Jones asserts discrimination claims against GISD under Title VII and the ADEA. *See* Doc. No. 3 at 7, ¶ 2; 10, ¶ 8. Jones asserts that GISD discriminated against him "based on Age, Color, Disability, National Origin, Race, Retaliation, and Sex." *Id.* at 11, ¶ 11. With respect to his Title VII claim, Jones also alleges that he is black, was qualified for the position of "Dean of Students," was demoted from that position "for no cause" and "ultimately discharged for other pretextual reason," and that the position was ultimately filled by a white male. *Id.* at 10, ¶ 9. GISD contends

that Jones failed to plead sufficient facts to establish any plausible discrimination claim against GISD under either Title VII or the ADEA.  Doc. No. 41 at 15.

First, turning to Jones' ADEA claim, Jones failed to plead sufficient facts to allege a plausible discrimination claim under the ADEA.  To establish an ADEA discrimination claim, a plaintiff must show "(1) they are within the protected class; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees."  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds*, 544 U.S. 228 (2005).  Jones failed to plead any facts establishing (1) his age or (2) that he was replaced by someone younger than him or that he was treated less favorably than younger employees outside the protected group.  Thus, Jones fails to establish a prima facie case of age-based discrimination.  Accordingly, Jones' ADEA discrimination claim against GISD should be dismissed.

Second, turning to Jones' Title VII claim, the undersigned discerns that Jones attempts to establish a disparate treatment claim under Title VII for race discrimination.  Doc. No. 3 at 10, ¶ 9.  "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin.  In such disparate-treatment cases, proof and finding of discriminatory motive is required."  *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).  "A plaintiff can prove discriminatory motive through either direct or circumstantial evidence."  *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

When a plaintiff chooses to prove discriminatory motive through circumstantial evidence, as Jones does here, a court analyzes the plaintiff's claim under the *McDonnell Douglas* burden-shifting framework.  *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  Generally, the

first step in the *McDonnell Douglas* analysis places the burden on the plaintiff to establish the presumption of discrimination by showing a prima facie case of discrimination. *Id.* To establish a prima facie case, Jones must show "that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021).

However, at the motion to dismiss stage, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Rather, the Fifth Circuit has noted that "it can be 'helpful to reference' [the McDonnell Douglas framework] when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Cicalese*, 924 F.3d at 767. While it is improper for a district court to require "a showing of each prong of the prima facie test for disparate treatment," (see *id.* at 766), nonetheless, plaintiffs must still "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

The Fifth Circuit has identified two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: "(1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese*, 924 F.3d at 767 (quoting *Raj*, 714 F.3d at 331) (internal quotations omitted). In other words, a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or

national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably." *Id.* at 767.

Jones failed to plead sufficient facts establishing the two ultimate elements of his disparate treatment claim for race discrimination under Title VII. In his *Amended Complaint*, Jones alleged that he is black, was qualified for the position of "Dean of Students," and was demoted and ultimately fired. Doc. No. 3 at 10, ⁋ 9. However, Jones failed to plead facts establishing that his alleged demotion and firing occurred *because of* his race. Rather, Jones only pleaded that he was "demoted from [the Dean of Students position] for no cause and ultimately discharged for other pretextual reason, and the position remained open and was ultimately filled by a white male." *Id.* Additionally, Jones alleges that he was "replaced by a white male pretextual based on the Superintendent agreeing to pay Plaintiff a salary increase." *Id.* at 10, ⁋ 9; 17, ⁋ 21.

The fact that Jones was replaced by a white male is insufficient, standing alone, to plausibly allege one of the ultimate elements of his disparate treatment claim: that he was demoted and terminated *because of* his race. While there is no requirement that Jones must prove every element of his prima facie case to survive a motion to dismiss, Jones must present *some* factual allegations that the adverse employment action was taken *because of* Jones' race. Jones failed to plead *any* facts suggesting that GISD terminated him because of his race. Moreover, Jones failed to plead any specific facts regarding the white male that allegedly filled his former role as to whether that person was similarly situated to him. Accordingly, Jones' Title VII discrimination claim should be dismissed.

To the extent Jones alleges discrimination claims under Title VII on the basis of his national origin and sex, any such claims amount to mere legal conclusions. See Doc. No. 3 at 11, ⁋ 11. Accordingly, to the extent that Jones asserts any discrimination claims under Title VII based on

national origin or sex, any such claims should be dismissed because Jones failed to plead facts plausibly establishing discrimination on the basis of either characteristic.

### 3.  Discrimination Claim Under the ADA

Jones asserts a discrimination claim under the ADA.  *See* Doc. No. 3 at 10, ⁋ 8.  Just as with Jones' other numerous claims in his *Amended Complaint*, he lists his ADA claim in a string of other claims and alleges no specific facts plausibly establishing an ADA violation by GISD.  To establish a prima facie discrimination claim under the ADA, a plaintiff "must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).  Jones references a "known and recorded disability in Plaintiff file" and an "illness," yet does not state what disability or illness he experienced.  Without any mention of a specific disability or illness, these allegations are not specific enough to establish that he has a disability protected by the ADA or that he was allegedly demoted and terminated because of his disability.  Thus, Jones fails to establish a prima facie case of discrimination based on disability under the ADA.  Accordingly, Jones' ADA claim against GISD should be dismissed.

### 4.  Retaliation Claims Under Title VII, the ADEA, and the ADA

Jones broadly asserts that he was retaliated against throughout his *Amended Complaint*, and the undersigned discerns that his retaliation claims could potentially be brought against GISD under Title VII, the ADEA, and the ADA.  Doc. No. 3 at 10, ⁋ 8.  Specifically, Jones alleges that GISD "violated Plaintiff's constitutional rights under color of law by singling Plaintiff out to retaliation" and "[i]n response to Plaintiff's outcry from the Superintendent's revelations, the 'All-White' school board continued to allow the Superintendent to create . . . retaliation against Plaintiff, as well as harass and wrongfully terminate Plaintiff on the pretextual actions that Plaintiff was

subordinate." Doc. No. 3 at 6, ⁋ 1; 10, ⁋ 8. GISD contends that Jones failed to plead sufficient facts to establish a plausible retaliation claim because he failed to show that he engaged in protected activity prior to his termination. Doc. No. 41 at 17. The undersigned agrees.

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims under Title VII, the ADEA, and the ADA. *See Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (applying framework to Title VII); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (applying framework to ADEA); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (applying framework to ADA). A plaintiff need not plead all the elements of a prima facie case of retaliation to survive a motion to dismiss under FED R. CIV. P. 12(b)(6). *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244 (5th Cir. 2017). However, the prima-facie standard still "has some relevance at the motion-to-dismiss stage" because "a plaintiff must plead sufficient facts on all of the ultimate elements to make her [retaliation claim] plausible." *Id.* (quotations omitted). To establish a prima facie case of retaliation under Title VII, the ADEA, or the ADA, Jones must show that (1) he engaged in conduct protected under the statutes; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017).

Regarding the first element, "[a]n employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). However, a "vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Ind. School Dist.*, 448 Fed.

App'x. 485, 493 (5th Cir. 2011). *See*, *e.g.*, *Moore v. United Parcel Service, Inc.*, 150 F. App'x. 315, 319 (5th Cir. 2005) (finding that plaintiff was not engaged in protected activity because though he filed a grievance against his employer, the grievance did not protest racial discrimination or any other unlawful employment practice protected under Title VII).

Here, Jones has not established that he engaged in conduct protected by Title VII, the ADEA, or the ADA. Jones broadly asserts that he was retaliated against but does not specify how GISD retaliated against him. The undersigned construes two possible adverse employment actions on which Jones might possibly base his retaliation claims: (1) his alleged demotion, and (2) his alleged termination. *See* Doc. No. 3 at 10, ⁋ 9. Regarding Jones' alleged demotion, he alleges that he was demoted from his position as "Dean of Students" to "Truancy Officer" in fall 2021. Doc. No. 3 at 16, ⁋ 20. Jones failed to plead any facts showing that he engaged in an activity protected by Title VII, the ADEA, or the ADA prior to his demotion. Further, Jones cannot establish a causal connection between any protected activity and his alleged demotion. Accordingly, Jones cannot establish a retaliation claim based on his demotion.

Regarding Jones' termination, he alleges that he was terminated following his multiple employee complaints. *Id.* at 21, ⁋ 34. The undersigned construes his termination as a potential basis for a retaliation claim. Between January and April 2022, Jones allegedly filed multiple employee complaints: an "employee complaint" emailed to his supervisor (*Id.* at 8, ⁋ 3); an "employee complaint form-Level One," (*Id.* at 8, ⁋ 5); an appeal to the GISD Board of Trustees (*Id.* at 19, ⁋ 28); and a subsequent appeal of the GISD Board of Trustee's dismissal of his first appeal (*id.* at 19, ⁋ 29). In May 2022, Superintendent Jackson attempted to meet with Jones three times regarding his various complaints, but Jones never attended any meeting. *Id.*, ⁋⁋ 24, 30–34. Jones was terminated after the third meeting that he failed to attend. *Id.* at 21, ⁋ 34.

Jones failed to plead any facts showing that any of his multiple complaints were a form of protected activity under Title VII, the ADEA, or the ADA.  While Jones need not plead facts establishing an airtight prima facie case of retaliation, he has failed to plead *any* facts indicating that he participated in protected activity, and in any case, that his ultimate termination was causally connected to his participation in protected activity.  Without *some* factual allegations supporting the existence of a prima facie case of retaliation, Jones cannot establish a plausible claim for retaliation.  Accordingly, Jones' retaliation claims against GISD under Title VII, the ADA, and the ADEA should be dismissed.

### 5. Hostile Work Environment Claims Under Title VII, the ADEA, and the ADA

Jones generally alleges a claim for hostile work environment.  Doc. No. 3 at 10, ⁋ 8.  The undersigned discerns that this claim could potentially be brought under Title VII, the ADEA, or the ADA.  *See id.*  Specifically, Jones alleges that "[i]n response to Plaintiff's outcry from the Superintendent's revelations, the 'All-White' school board continued to allow the Superintendent to create a hostile work environment."  *Id.*  GISD contends that Jones has failed to state a hostile work environment claim under any statute.  Doc. No. 41 at 18–19.  To state a claim for hostile work environment under Title VII, Jones must allege: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the claimed harassment was based on the protected characteristic; (4) the claimed harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).  *See also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (applying same elements to ADEA claims); *Thompson v. Microsoft Corporation*, 2 F.4th 460, 470–71 (5th Cir. 2021) (applying same elements to ADA claims).

28

Here, Jones has not alleged facts establishing that GISD harassed him beyond his bare allegations that the GISD School Board "continued to allow the Superintendent to create a hostile work environment." This statement amounts to a legal conclusion asserted without any supporting facts suggesting a plausible harassment claim. Moreover, Jones has alleged no facts at all indicating that any alleged harassment by GISD was based on his race, his age, or his disability status. Thus, Jones failed to establish two elements of a hostile work environment claim. Accordingly, Jones' hostile work environment claims should be dismissed.

### 6. Voting Rights Act Claim

Next, Jones asserts a claim under the Voting Rights Act against GISD. Doc. No. 3 at 22–23, ¶ 39. Specifically, Jones seeks to challenge "the 'at-large' election system used by Grapeland Independent School District to elect its Trustees, which has deprived hundreds of minority voters in GISD of their voting rights guaranteed by law." *Id.* Though Jones does not specifically allege under which subsection of the Voting Rights Act he seeks to bring his claim, the undersigned discerns that Jones likely attempts to bring this claim pursuant to Section 2 of the Voting Rights Act of 1965. *See* 42 U.S.C. § 1973. GISD contends that for a plaintiff's claim under the Voting Rights Act to survive a motion to dismiss under FED R. CIV. P. 12(b)(6), a plaintiff must allege sufficient facts plausibly establishing three threshold conditions established by the United States Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). Doc. No. 41 at 19. GISD contends that Jones has not established any of the three threshold conditions articulated in *Gingles*. *Id.* The undersigned agrees.

To successfully plead a claim under Section 2 of the Voting Rights Act, Jones must make two showings. First, Jones must allege facts plausibly establishing all three *Gingles* "preconditions": (1) The minority group must be sufficiently large and compact to constitute a

majority in a reasonably configured district, (2) the minority group must be politically cohesive, and (3) a majority group must vote sufficiently as a bloc to enable it to usually defeat the minority group's preferred candidate. *Wisconsin Legislature v. Wisconsin Elections Comm'n*, 595 U.S. 398, 402 (2022) (citing *Gingles*, 478 U.S. at 50–51). Second, if these three preconditions are established, "a court considers the totality of circumstances to determine 'whether the political process is equally open to minority voters.'" *Id.* Here, Jones offers several vague critiques referencing GISD's system of electing its trustees but fails to allege any facts plausibly establishing any of the three *Gingles* preconditions. *See* Doc. No. 3 at 22–24, ¶¶ 38–47. Accordingly, Jones' claim against GISD under the Voting Rights Act should be dismissed.

### 7.  42 U.S.C. § 1981 Claim

Jones asserts a claim against GISD under 42 U.S.C. § 1981. Doc. No. 3 at 10, ¶ 8. To establish a race discrimination claim under § 1981, Jones must show (1) he is a member of a racial minority; (2) the school district defendants intentionally discriminated against him due to his race; and (3) the discrimination concerns one or more of the enumerated activities in the statute. *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Jones' § 1981 claim against GISD fails for the same reason as his § 1981 claim against the school district defendants: he failed to plead sufficient facts to plausibly allege that GISD discriminated against him *due to* his race. Thus, he failed to establish one of the three required elements for a § 1981 discrimination claim. Accordingly, Jones' § 1981 claim against GISD should be dismissed.

### 8.  42 U.S.C. § 1985

Next, Jones asserts a claim against GISD under 42 U.S.C. § 1985. Doc. No. 3 at 10, ¶ 8. Though Jones does not specify which subsection of 42 U.S.C. § 1985 his claim is brought under, the undersigned construes his complaint to state a potential claim under § 1985(3). To state a valid

claim under § 1985(3), a plaintiff must allege that: (1) there was a conspiracy; (2) the conspiracy was made to deprive a person of equal protection of the laws; (3) there was an act under the conspiracy; (4) the act caused injury to a person, property, or deprivation of a right; and (5) a race- or class-based discriminatory animus underlay the conspiracy. *Hilliard*, 30 F. 3d at 652–53. To allege the existence of a conspiracy, a plaintiff must allege the involvement of two or more persons. *See id.* at 653. Moreover, "a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)." *Id.* Jones' § 1985 claim against GISD fails for the same reason as his § 1985 claim against the school district defendants: he failed to plead any facts establishing the existence of a conspiracy between two or more persons or entities. Accordingly, Jones' claim against GISD under § 1985 should be dismissed.

### 9. Constitutional Claims Under 42 U.S.C. § 1983

Jones generally alleges violations of his First, Fifth, Tenth, and Fourteenth Amendment rights against GISD. Doc. No. 3 at 6. Jones' claims against GISD are identical to his claims against the school district defendants. *See id.* Accordingly, Jones' constitutional claims against GISD under § 1983 should be dismissed for the same reasons as his claims against the school district defendants: Jones failed to plead sufficient facts to establish any constitutional violation under the First, Fifth, Tenth, or Fourteenth Amendments.

### V.    EEOC Defendants' Motion to Dismiss

Jones names the EEOC and several EEOC officials ("EEOC defendants") as defendants in the caption of his *Amended Complaint* but sparingly discusses the EEOC defendants in the body of his complaint.[8] The EEOC defendants' instant *Motion to Dismiss* (Doc. No. 66) addresses

---

[8] The undersigned notes that Jones has previously filed similar claims against the EEOC in the Northern District of Texas, all of which were dismissed by the district court whose decision was affirmed by the Fifth Circuit. *See Jones v. Equal Emp. Opportunity Comm'n*, No. 3:21-CV-1953-E-BN, 2021 WL 3917007, at *1 (N.D. Tex. Aug.

Jones' claims brought against the agency and individual defendants. The undersigned discerns only one potential claim against the EEOC from Jones' *Amended Complaint*, which is Jones' allegation that the EEOC failed to file suit on his behalf after Jones reported his dispute with GISD to the EEOC. Doc. No. 3 at 26, ¶ 59. Additionally, Jones asks the court to compel the EEOC to represent him in this matter. *Id.* at 28. The EEOC defendants move to dismiss all causes of action brought against them. Doc. No. 66 at 2.

The EEOC defendants contend that to the extent Jones has alleged any claims against the EEOC defendants, all such claims must be dismissed for three reasons. Doc. No. 66 at 5–7. First, Title VII does not confer a right of action against the EEOC on a charging party. *Id.* at 5–6; *see Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002); *see also Jones v. EEOC*, No. 21-10914, 2021 WL 5444736, at *2 (5th Cir. Nov. 19, 2021) (holding that Title VII does not confer a right of action against the EEOC on a charging party in a previous case Jones filed against the EEOC). Second, the EEOC maintains sovereign immunity against suit because it is a federal agency. *Id.* at 6–7; *see F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (holding that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). *See also Lane v. Pena*, 518 U.S. 187, 192 (1996) (holding that a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied") (internal citations omitted). The EEOC defendants contend that Jones has failed to identify a waiver of the EEOC's sovereign immunity from suit. *Id.* at 6. Third, Jones has not stated a claim for relief based on the conclusory allegations in his *Amended Complaint*. Doc. No. 66 at 7.

---

24, 2021), *report and recommendation adopted*, No. 3:21-CV-1953-E, 2021 WL 3914039 (N.D. Tex. Sept. 1, 2021), *aff'd*, No. 21-10914, 2021 WL 5444736 (5th Cir. Nov. 19, 2021).

The undersigned agrees with all three reasons advanced by the EEOC defendants. Accordingly, to the extent Jones has alleged any claim against the EEOC or EEOC officials, all such claims should be dismissed.

### VI.    Conclusion

For the foregoing reasons, the undersigned recommends **GRANTING** the School District Defendants' *Motion to Dismiss* (Doc. No. 34); GISD's *Motion to Dismiss* (Doc. No. 41); and the EEOC Defendants' *Motion to Dismiss* (Doc. No. 66).

### VII.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds

of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge

34